IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHNNIE TUCKER, | : |
| | :    Case No. 2:16-cv-863 |
|     Plaintiff, | : |
| | :    JUDGE ALGENON L. MARBLEY |
| v. | : |
| | :    Magistrate Judge Jolson |
| KAREN NELSON, *et al.,* | : |
| | : |
|     Defendants. | : |

**OPINION & ORDER**

This matter comes before the Court on Plaintiff's Motion in Limine (ECF No. 36) and Defendants' Supplemental Trial Brief (ECF No. 44). The Court issued oral decisions on the motions at the Wednesday, May 24, 2019 Final Pretrial Conference, but sets forth its reasoning more fully herein. For the following reasons, the Court **DENIES** Plaintiff's Motion to limit the Defendants' opinion witness testimony. The Court **HOLDS IN ABEYANCE** Plaintiff's Motion to exclude Dr. Atkinson's statement in Mrs. Tucker's medical record. The Court **GRANTS** Defendants' Motion to exclude cross-examination on Dr. Nelson's failed attempts at board certification.

**I. BACKGROUND**

Brenda Tucker, a citizen of West Virginia, went to the Holzer Clinic in Gallipolis, Ohio, for an angiogram, angioplasty, and stenting of her left common iliac artery on November 2, 2015. (ECF No. 1 at 2). Dr. Dean Siciliano performed the procedure. About an hour after the procedure, Mrs. Tucker's right foot began to hurt, and her foot appeared pale. The doctors put Mrs. Tucker on a heparin drip. Her foot pain intensified, and Dr. Nelson performed surgery on Mrs. Tucker.

1

Plaintiff alleges that Mrs. Tucker experienced an arterial bleed, and Dr. Nelson negligently treated the bleed. Mrs. Tucker died following the surgery. Johnnie Tucker, as Administrator of Mrs. Tucker's estate, brought this action for wrongful death.

## II. STANDARD OF REVIEW

As a general rule, "a court should exclude evidence on a motion in *limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-CV-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012). Thus, when the "court is unable to determine whether . . . certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders on motions in limine that exclude broad categories of evidence should rarely be employed; the better practice is to deal with questions of admissibility of evidence as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-CV-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts . . . are generally reluctant to grant broad exclusions of evidence *in limine,* because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."). Whether to grant a motion in limine falls within the sound discretion of the trial court. *Delay*, 2012 WL 5878873, at *2.

## III. LAW & ANALYSIS

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' . . . ." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (internal citation omitted). "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance

the ball." *Id.* at 401.  Additionally, evidence can be relevant even if it does not relate to a fact in dispute, provided the evidence supplies background information about a party or issue. *See* Advisory Committee Notes to 1972 Proposed Rules ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."). Relevant evidence is admissible unless excluded under a specific provision of the Constitution, a federal statute, Federal Rules of Evidence, or other rules prescribed by the Supreme Court.  Fed. R. Evid. 402.

Rule 403 can operate to bar otherwise relevant evidence.  Rule 403 grants trial courts discretion to exclude evidence "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### A. Information Contained in Medical Records

Plaintiff moves to exclude Dr. Sarah Atkinson's statement in Mrs. Tucker's medical records.  Dr. Atkinson states: "Given results of aortogram and CT this is likely a venous bleed." Plaintiff argues that Dr. Atkinson never saw Mrs. Tucker and that the statement goes to an ultimate issue in the case—where Mrs. Tucker was bleeding.  (ECF No. 36 at 1).  Plaintiff also argues that this statement is hearsay not subject to any exception.  Defendants argue that this statement is admissible as a business record under Rule 803(6) and that Dr. Atkinson was involved in diagnosing and treating Mrs. Tucker.  (ECF No. 39 at 3).

Hearsay is any out of court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  The statement here is hearsay: Dr. Atkinson made the out of court statement, and the Defendants are offering it for the truth of the matter

3

asserted in the statement. Generally, hearsay is not admissible unless an exception applies. Fed. R. Evid. 802.

Defendants argue that Dr. Atkinson's statement is admissible as a statement made for medical diagnosis or treatment under Federal Rule of Evidence 803(4). Rule 803(4) provides an exception to the rule against hearsay if a statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). But this exception only "applies . . . to statements made by the one actually seeking or receiving medical treatment." *Field v. Trigg Cty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). *See also United States v. Mason*, 294 F. App'x 193, 199 (6th Cir. 2008) (unpublished) (quoting *Field*, 386 F.3d at 736) (finding that statements made by the doctor, not the patient, were not admissible under Rule 803(4)). Defendants argue that *Field* presented a different factual scenario than the statements here because in *Field* the Sixth Circuit was deciding the admissibility of statements made by two doctors to a third doctor about the third doctor's treatment. Defendants are correct that this case presents different facts than *Field*. Nevertheless, the language in *Field* is broad enough to encompass the scenario here. *Field* says, plainly, that Rule 803(4) applies only to statements by the patient, not the doctor. Thus, Dr. Atkinson's statement is not admissible under Rule 803(4).

Defendants have also argued that Dr. Atkinson's statement is admissible under the business records exception in Rule 803(6). Rule 803(6) provides for an exception to the rule against hearsay for business records if

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;

4

> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Medical records can be offered into evidence under the business records exception, provided the party offering the records for admission can meet the requirements set forth in Rule 803(6). *See Lankford v. Reladyne, LLC*, No. 1:14-cv-682, 2016 WL 1444307, at *2 (S.D. Ohio Apr. 8, 2016) ("Medical records may qualify for the business record exception to the rule against hearsay."). Medical records, like other records being admitted under Rule 803(6), must be "kept in the course of a regularly conducted activity." And although "[h]ospital diagnoses may qualify for this exception to the hearsay rule," Rule 803(6) "specifically refers to the 'compilation, in any form, of…diagnoses, made at or near the time by…a person with knowledge, if kept in the course of a regularly conducted business activity…". *Norton v. Colyer*, 828 F.2d 384, 386-87 (6th Cir. 1987) (internal citations omitted).

Plaintiff argues that because Dr. Atkinson, the declarant at issue, was "a consulting surgeon who never spoke to or provided treatment to Mrs. Tucker," the statement and records cannot qualify as 803(6) records. (ECF No. 36 at 1). Further, Dr. Atkinson is not on Defendants' witness list and was not deposed, meaning both that the records lack a proper custodian as required by Rule 803(6) and that she cannot be properly confronted about her statement in an effort to interrogate its reliability. *See Mathis v. Roa*, 2:14-CV-2555, 2018 WL 5045766 at *2 (S.D. Ohio) (finding a doctor's statement to be within the hearsay exceptions but limiting testimony to the doctor who testified at trial because only that doctor could be the custodian and be cross-examined).

Defendants do not squarely address the custodian or "regular course of business" issues. They characterize Plaintiff's argument as being "that he doesn't know whether Dr. Atkinson is qualified, as a general surgeon, to interpret imaging studies and make a determination as to the source of bleeding." (ECF No. 39 at 3). To be clear, Plaintiff's objection is not that Dr. Atkinson is not qualified to opine in the abstract, but rather that this one line of her analysis will be admitted as evidence devoid of context, because "no one knows how or why Dr. Atkinson reached her opinion because she has not been deposed and she will not be testifying at trial." (ECF No. 36 at 3). Having characterized Plaintiff's argument thus, Defendants continue on to say that, "[s]ince that argument could be used against any physician whose opinions and diagnoses are contained in the medical records that have been stipulated to as admissible in this case, this is a rather curious argument," and that "Dr. Atkinson's opinion is the result of interpreting imaging studies, not simply relying on a report of a radiologist." (ECF No. 39 at 3).

The Federal Rules of Evidence do not prohibit, in the abstract, the admission of a diagnosis in a medical record so long as all of the requirements of Rule 803(6) are satisfied. *See Wharton v. Preslin*, 2009 WL 1850085 (S.D. Ohio) (permitting evidence of medical records "provided that such records are relevant and that a proper foundation is laid," as provided in Rule 902(11) and 902(12)). Therefore, Defendants may introduce the statement in the medical record provided they can lay a proper foundation at trial. Plaintiff may renew his objection to the admissibility of the statement at that time.

Plaintiff relies on *Mathis v. Roa*, but that case is distinguishable. In *Mathis*, the Court allowed the statement of a physician in a medical record but limited the testimony to the doctor who testified at trial because that doctor was the only one who was a custodian of the record and could be cross-examined. *Mathis*, 2018 WL 5045766, at *2. But the statements in *Mathis*

attempted to fix the cause of the plaintiff's harm on another doctor who treated the plaintiff in the past. Here, Dr. Atkinson's statement is in the form of a medical diagnosis and was made while treatment of Mrs. Tucker was ongoing.

Rule 403 does not bar admission of Dr. Atkinson's statement. Under Rule 403, evidence may be excluded "if its probative value is substantially outweighed" by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Plaintiff did not expand on his basis for invoking Rule 403, except to say that the statement could only be made by a Rule 702 opinion witness, and Dr. Atkinson is not being offered as such. The probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Plaintiff's concerns go to weight, not admissibility. Both sides are presenting the testimony of their own opinion witnesses as to the cause of Mrs. Tucker's bleed. The jury is already tasked with evaluating competing opinions. Dr. Atkinson's statement would merely be a third potential statement to evaluate, and the jury is more than capable of assessing the weight to accord her statement, particularly when comparing the amount of context surrounding Dr. Atkinson's statement with the context surrounding the testimony of the two opinion witnesses.

Plaintiff has also asked that Defendants' opinion witnesses be precluded from referencing Dr. Atkinson's statement. As a threshold matter, if the statement is admitted, obviously Defendants' opinion witnesses may refer to it. Even if Dr. Atkinson's statement is not admitted, Rule 703 allows for an opinion based on "those kinds of facts or data in forming an opinion on the subject" that "experts in a particular field would reasonably rely on," even if those facts or data are not admissible. Fed. R. Evid. 703. If the opinion witness does rely on such inadmissible

7

evidence, however, the inadmissible evidence may be disclosed "to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. As stated above, Dr. Atkinson's statement is relevant, and so long as Defendants can establish that the information is the type that experts in the field rely on, it will be admitted under Rule 703.

Plaintiff's Motion in Limine is therefore **HELD IN ABEYANCE** but will be denied if Defendants can lay the foundation under 803(6) or can establish that Dr. Atkinson's statement is the type relied upon under Rule 703.

### B. Testimony Regarding Dr. Nelson's Board Certification Exam

Defendants have moved to exclude any reference to Dr. Nelson's failed attempts to obtain board certification in cardiothoracic surgery. Defendants intend to call Dr. Nelson as an opinion witness at trial. Dr. Nelson twice attempted the cardiothoracic surgery board certification exam, and failed the exams, before treating Mrs. Tucker. After treating Mrs. Tucker, Dr. Nelson passed the cardiothoracic surgery board certification exam. Plaintiffs seek to use these failed attempts to pass the board certification exam as a means of attacking her credibility as an opinion witness. Defendants argue that such testimony is irrelevant and unfairly prejudicial.

Generally, "[w]here a physician sued for malpractice testifies as an expert, evidence as to the physician's age, practice, and other matters going to the physician's qualifications as an expert is admissible." 61 Am. Jur. 2d Physicians, Surgeons, Etc. § 316. Following this reasoning, some state courts have upheld lower court rulings allowing evidence of a physician's failed attempts to become board certified. For example, the South Carolina Court of Appeals in *Ward v. Epting* upheld a decision to allow evidence of past board certification exam failures

because the lack of a certification bore on the doctor's credibility. *Ward v. Epting*, 351 S.E.2d 867, 872–73 (S.C. Ct. App. 1986).

There is a dearth of federal caselaw on whether a doctor's failed attempts to become board certified in a specialty are admissible for impeachment purposes when the doctor testifies as an opinion witness. At least one federal circuit upheld a district court's ruling prohibiting evidence of failed attempts to pass the board certification exam but allowed testimony that the doctor was not board certified. *Campbell v. Vinjamuri*, 19 F.3d 1274, 1276–77 (8th Cir. 1994). The Eighth Circuit in *Campbell* found that the doctor's previous attempts at board certification were not relevant and that "it would be improper for the jury to use the evidence . . . to conclude that because a physician was unable to pass his board exams, he was negligent on a specific occasion." *Id.* at 1277. While the Eighth Circuit qualified its opinion by saying it did "not decide whether a different result would be warranted had [the doctor] given more extensive expert testimony," *id.* at 1277 n.2, it nevertheless noted that the doctor's "test failures have no clear connection to his knowledge and experience of the matter of which he was testifying (whether or not he met the standard of care . . . )." *Id.* at 1277.

Several state cases have taken a similar approach. Ohio courts of appeals routinely uphold the exclusion of past board certification exam failures but allow testimony that a doctor is not board certified, even when the doctor testifies as an expert. *See, e.g.*, *Shoemake v. Hay*, 2003-Ohio-2782, at ¶ 15 (Ohio Ct. App. 2003) (concluding that whether the doctor "failed his OB/GYN board certification exam is not relevant to his credibility or to the ultimate issue of whether he violated the standard of care" and noting that the jury knew that the doctor "was not board certified in the sub-specialty of OB/GYN"); *O'Loughlin v. Mercy Hospital Fairfield*, 2015-Ohio-152, at ¶¶ 9–12 (upholding exclusion of past board certification exam failures where

9

doctor testified as expert and jury knew that doctor was not board certified).

Many state cases that have noted the admissibility, in general, of previous board failures many of those cases upheld, in the next breath, a lower court's exclusion of such evidence. Generally, these cases have noted that such evidence may be relevant to an expert's qualifications, and therefore credibility. *See, e.g.*, Gipson v. Younes, 724 So.2d 530, 532 (Ala. Civ. App. 1998) ("[W]hen a physician sued for malpractice testifies as an expert, the fact that he has failed a board certification exam is relevant to his credibility as an expert."). But many of these cases have also hewed to the distinction between lack of a board certification altogether and failed attempts at board certification. *But see Rockwood v. Singh*, 630 N.E.2d 873, 875 (Ill. Ct. App. 1993) (noting that failed attempts at board certification are "relevant and admissible" where doctor is testifying as expert and that trial court did not err in excluding such evidence because the doctor did not testify as to the appropriate standard of care).

Moreover, many state cases have noted the possibility for unfair prejudice to result from admitting evidence of past unsuccessful attempts to become board certified. Se*e, e.g.*, *Jackson v. Buchman*, 996 S.W.2d 30, 35 (Ark. 1999) (upholding decision to exclude evidence of failed attempts at board certification on Rule 403 considerations); *McCray v. Salah Uddin Shams, M.D., S.C.*, 587 N.E.2d 66, 69–70 (Ill. App. Ct. 1992) (upholding decision to prohibit evidence of board certification failures where the jury knew the doctor was not board certified and the standard of care was the same for a certified and a non-certified doctor).

Even *Ward*, arguably the most widely-cited case on this issue, is not directly on point. In *Ward*, the testifying doctor lacked a certification altogether, and the South Carolina Court's holding simply stated that "[t]he fact that [the doctor] was not board certified relates to her credibility as a witness." *Ward v. Epting*, 351 S.E.2d at 873. Ward's applicability to the

situation here is, therefore, limited.

From the foregoing cases, the following general rule can be distilled: When a doctor is testifying as an opinion witness, the fact that she is not board certified in a particular specialty is admissible. Whether the doctor previously failed board certification exams may be relevant, but the probative value of such evidence must be weighed against the possibility for unfair prejudice, as required by Rule 403.

While Dr. Nelson's past attempts at board certification may have some limited probative value as to her credibility, such probative value is outweighed by the potential for unfair prejudice and confusing the issues. Plaintiff's brief arguing for the admission of the evidence of her past failures demonstrates the ease with which Dr. Nelson's credibility can be conflated with the merits of whether she was negligent. Plaintiff argues that Dr. Nelson's testimony will help establish the standard of care and that "she treated Mrs. Tucker in the best and safest way possible." (ECF No. 53 at 2). While the first use of her testimony goes to proper medical procedure, the second use—whether she properly treated Mrs. Tucker—bears on her own alleged negligence. Using Dr. Nelson's previous failures to pass the board certification exam to impeach her credibility, while permissible, could too easily be conflated with whether she was negligent at the time she treated Mrs. Tucker. The question of the proper standard of care, and whether an individual doctor met that standard of care in a specific instance, is independent of a doctor's board certification. *See Campbell*, 19 F.3d at 1277 ("[I]t would be improper for the jury to . . . conclude that because a physician was unable to pass his board exams, he was negligent on a specific occasion.") (citing *Beis v. Dias*, 859 S.W.2d 835 (Mo. App. 1993)).

While the jury will have to weigh the competing testimony of the Plaintiff's and Defendants' opinion witness, Dr. Nelson is unlikely to be the only physician who will testify for

11

Defendants as to the proper standard of care. Dr. Black's deposition also addresses the standard of care, and Dr. Watson's testimony could similarly overlap with Dr. Nelson's. Therefore, it will not be the simple matter of comparing Dr. Nelson's testimony to Plaintiff's opinion witness, Dr. Sampson, and deciding who is right and who is wrong.

Unlike in other cases in which the doctor testifying as an expert lacked board certification, Dr. Nelson has since passed the board certification exam for cardiothoracic surgery. Therefore, cross-examining Dr. Nelson on her lack of board certification at the time of Mrs. Tucker's procedure would only magnify the risk of unfair prejudice because it could too easily lead the jury to doubt Dr. Nelson's competency as a doctor at the time of treatment, rather than comparing her actions to the appropriate standard of care.

Plaintiff may, however, cross-examine Dr. Nelson as to *how long* she has been board-certified. Additionally, Plaintiff may be permitted to cross-examine Dr. Nelson as to her failed attempts to become board certified should Defendants open the door on direct examination. *See Nelson v. Waxman*, 9 S.W.3d 601, 605 (Mo. 2000) (allowing cross-examination on failed board certification attempts because direct examination implied that the doctor was "not board certified in critical care *only* because the board examination was not available" and that the doctor was a member of the "Society of Critical Care" without explaining what was required to be such a member).

### C. Testimony from Multiple Opinion Witnesses

Plaintiffs also move to exclude the testimony of Defendants' opinion witnesses, arguing that having multiple witnesses testify to the same facts is cumulative evidence. Defendants argue that the two witnesses will not testify to precisely the same facts and that each witness will be used for a different sub-area or specialty. Defendants explain that "[a]though Dr. Watson's

12

testimony will necessarily overlap regarding opinions on the standard of care and causation, Dr. Watson will focus on the pathophysiology involved in a patient like Brenda Tucker and the cascade of events as described in his deposition," whereas Dr. Black "will explain the procedure performed and the complications that occurred and distinguish for the jury why Brenda Tucker died from a rare but known complication…" (ECF No. 39 at 4-5).

In general, the district court "retains considerable latitude even with admittedly relevant evidence in rejecting that which is cumulative, and in requiring that which is to be brought to the jury's attention to be done so in a manner least likely to confuse that body." *Hamling v. United States*, 418 U.S. 87, 127 (1974). In addition, it is "well within the discretion of a district court to limit the number of expert witnesses who testify at trial," although "limiting experts because of mere numbers, without reference to the relevancy of their testimony, is an abuse of discretion." *Coal Resources, Inc. v. Gulf & Western Industries, Inc.*, 865 F.2d 761, 769 (6th Cir. 1989) (internal quotations and citations omitted). The question in these instances is whether the judge "articulated legitimate, rational reasons for its decision." *Id*. In *Coal Resources,* the district court limited the parties to two expert witnesses each because of the belief that those experts could cover all the necessary material without needlessly extending the length of the trial. *Id.* at 770. However, the court also told the parties, "if it develops that you are unable properly to present your case, I'll hear from you then, but I'm not going to do it in reverse. I'm simply saying at this point two expert witnesses per side. I will hear from you, in the event it appears that that's unfair or restrictive or whatever it might be." *Id*. The Sixth Circuit found this initial position was not an abuse of discretion. *Id*. Similarly, in *Flannigan v. GAF Corp*, 904 F.3d 36, 1990 WL 73212 (6th Cir. 1990) (unpublished), the Sixth Circuit found that the district court did not abuse its discretion by limiting the plaintiff to two expert witnesses, after explaining that "the

13

plaintiff could seek to have the ruling changed during trial if he could convince the court of his need to call a third expert." *Id.* at *4. The plaintiff had sought to call two doctors—the treating physician who was not board certified and the board-certified, non-treating physician who reviewed the treating physician's records. The district court found the testimony of both doctors would be cumulative, and the plaintiff chose not to call the board-certified physician who did not examine the patient. A panel of the Sixth Circuit affirmed, in part because the board-certified physician "based his opinion solely on the record and report prepared" by the treating physician. *Id.*

Plaintiff's Motion in Limine is **DENIED.** As Defendants represented in their Response to Plaintiff's Motion in Limine, and again at the Final Pretrial Conference, the two proffered opinion witnesses will testify to different aspects of the case—Dr. Black's testimony will focus more on the procedure that Mrs. Tucker underwent while "Dr. Watson will focus on the pathophysiology involved in a patient like Brenda Tucker and the cascade of events as described in his deposition." (ECF No. 39 at 5). The testimony of the two opinion witnesses, as defined by the Defendants, is not cumulative.

## IV. CONCLUSION

For the foregoing reasons, this Court **DENIES** Plaintiff's Motion to limit the Defendants' opinion witness testimony. The Court **HOLDS IN ABEYANCE** Plaintiff's Motion to exclude Dr. Atkinson's statement in Mrs. Tucker's medical record. The Court **GRANTS** Defendants'

Motion to exclude cross-examination of Dr. Nelson on her previous failed attempts to become board certified.

**IT IS SO ORDERED.**

                                                  <u>s/Algenon L. Marbley</u>
                                                  **ALGENON L. MARBLEY**
                                                  **United States District Judge**

**DATED: June 3, 2019**